**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RESIDENTIAL CREDIT OPPORTUNITIES TRUST, | |
| Plaintiff, | Civil Action No. 16-561 |
| v. | Chief Judge Beryl A. Howell |
| LUIS IVAN POBLETE, | |
| Defendant. | |

**MEMORANDUM OPINION**

The plaintiff, Residential Credit Opportunities Trust, initiated this lawsuit against Luis Ivan Poblete, who proceeds *pro se*, to obtain judicial foreclosure of real property located in Washington, D.C. (the "Property"), pursuant to D.C. Code § 42-816 and common law.  Pending before the Court is the plaintiff's motion for summary judgment and the defendant's motion to cancel a non-judicial foreclosure sale.  *See* Pl.'s Mot. Summ. J., ECF No. 6; Def.'s Pet. Cancel Sale, ECF No. 26.  For the reasons set forth below, the parties' motions are denied, and the case is dismissed as moot.

**I.      BACKGROUND**

The defendant was the owner of residential real property at 4130 16th Street NW in Washington, D.C. (the "Property") and held a title deed, recorded with the Recorder of Deeds as Document Number 2006014131.  Pl.'s Restated & Suppl. SMF ("Pl.'s SMF") ¶ 2, ECF No. 13. On January 29, 2007, the defendant executed a Deed of Trust and Note with a lender in the original principal amount of $898,400.00, *see generally* Pl.'s Reply Def.'s Opp'n Pl.'s Mot. Summ. J. ("Pl.'s Reply"), Ex. B, Deed of Trust, ECF No 13-2; *id.*, Ex. C, Note, ECF No. 13-3, but the lender assigned its rights to a third-party, eventually leading to assignment to the

1

plaintiff, *see id.*, Ex. D, Assignment of Deed of Trust, ECF No. 13-4.  *See* Pl.'s SMF ¶¶ 3–4. Less than two months later, on March 1, 2007, the defendant failed to make his required payments under the Note and thus defaulted on the Note.  *Id.* ¶ 5.  On May 9, 2013, in accordance with the procedures set out in the Deed of Trust, the plaintiff caused a demand letter, stating the amount needed to cure the default, to be mailed to the defendant.  *Id.* ¶ 6.  The defendant never cured the default, and "to date neither Plaintiff . . . nor any prior assignor has ever received payment on the Note since its origination."  *Id.* ¶ 7.  As of July 26, 2016, the plaintiff was owed $1,811,750.64 on the Note.  *Id.* ¶ 8.

The long and protracted history of the present suit began on August 21, 2013, when the plaintiff's predecessor-in-interest filed a complaint in the Superior Court of the District of Columbia seeking judicial foreclosure of the Property, pursuant to D.C. Code § 42-816 and common law, or, in the alternative, a judicial sale.  *See* Compl., Super. Ct. File, Attachment 3 at 141–48, ECF No. 2-3.  On December 5, 2014, after the close of discovery, and just four days before the date of a pre-trial conference in the Superior Court, the defendant removed the case to this Court.  *See* Pl.'s Mot. Summ. J. at 2–3.  Concluding that the removal was untimely under 28 U.S.C. § 1446(b), the Court immediately remanded the case back to the Superior Court.  *See* Order, *CPCA Trust I v. Poblete (Poblete I)*, No. 14-cv-2063 (D.D.C. 2014), ECF No. 4.  The defendant filed a motion for reconsideration, two motions to stay, and an appeal, each of which was denied, and, in addition, after the case was closed, a motion to convene a special grand jury, for which leave to file was denied in light of the lack of any pending case.  *See* Def.'s Mot. Reconsideration, *Poblete I*, No. 14-cv-2063, ECF No. 5; Def.'s Mot. Stay, *Poblete I*, No. 14-cv-2063, ECF No. 6; Min. Order, dated Dec. 15, 2014, *Poblete I*, No. 14-cv-2063; Def.'s Notice of Appeal, *Poblete I*, No. 14-cv-2063, ECF No. 7; Def.'s Mot. Stay, *Poblete I*, No. 14-cv-2063,

ECF No. 8; Min. Order, dated Dec. 22, 2014, *Poblete I*, No. 14-cv-2063; Mandate of U.S. Court

of Appeals, *Poblete I*, No. 14-cv-2063, ECF No. 13; Leave to File Denied, *Poblete I*, No. 14-cv-

2063, ECF No. 12.  The case could not be remanded until after the defendant's various post-

decision motions and appeal were decided, and, thus, was not remanded until September 4,

2015—nearly ten months after this Court's Order of remand.  *See* Docket Entry, dated Sept. 4,

2015, *Poblete I*, No. 14-cv-2063.

On the same day the remand took effect, September 4, 2015, the Superior Court reopened

the case.  The plaintiff filed a motion for summary judgment on November 10, 2015, *see* Pl.'s

Mot. Summ. J. at 1, which the defendant opposed, *see* Def.'s Obj. Pl.'s Mot. Summ. J. at 1, ECF

No. 7.  The Superior Court scheduled a hearing for March 25, 2016, but before the hearing took

place, on March 24, 2016, the defendant for the second time filed a notice of removal to federal

court.  Docket Sheet, Super. Ct. File, Attachment 1 at 1–4, ECF No. 2-1.  Upon review of the

removed case, this Court issued an Order to Show Cause why the case should not be remanded

for lack of subject matter jurisdiction, *see* Min. Order, dated July 7, 2016, to which the plaintiff

responded explaining that the Court possessed diversity jurisdiction over the action and that,

while it could have objected to the removal under the applicable statutory framework, the

plaintiff "would be extremely prejudiced by the delay associated with a [s]econd remand order

and likelihood of yet another appeal."  Pl.'s Reply Show Cause Order at 2–3, ECF No. 10.

Conscious of the jurisdictional merry-go-round on which the plaintiff found itself, the Court

discharged the Order to Show Cause and exercised jurisdiction over the matter, in which the

plaintiff's motion for summary judgment was pending.  *See* Min. Order, dated July 19, 2016.

The defendant then proceeded to make a series of filings in this matter seemingly

intended to further delay its resolution.  First, on August 19, 2016, the defendant filed a notice

providing that he "filed for involuntary Chapter 7 bankruptcy" and "all activity in this court should be on stay," Def.'s Judicial Notice to Court, ECF No. 14, which the Court construed as an invocation of the automatic stay requirement of 11 U.S.C. § 362(a) and, after receiving briefing from the plaintiff on the issue, denied in view of the bankruptcy court's dismissal of the action as nonmeritorious, *see* Min. Order, dated Sept. 6, 2016; *see also* Pl.'s Resp. Aug. 24, 2016 Min. Order, Ex. 1, ECF No. 16-1 (copy of Order from bankruptcy court dismissing action). Also on August 19, 2016, the defendant filed a notice indicating that he had filed a case in Superior Court against counsel for the plaintiff in this case, this Court, the United States Marshal for the District of Columbia, and the United States Attorney for the District of Columbia. *See* Def.'s Mandatory Judicial Notice, ECF No. 15. Then, on September 1, 2016, the defendant gave "notice of Indigenous Standing" and asserting that "[t]his court is the incorrect venue, because [he is] now protected by International Law." Def.'s Judicial Notice, ECF No. 17. Due to this so-called "status change," the defendant sought a hearing to "be held in camera," Def.'s Mot. Status Change Hr'g, ECF No. 19, and filed a further motion for an *in camera* hearing, to "rebut[] the presumption of death under Maritime Law, which is the foundation of the judicial system," Def.'s Request In Camera Hr'g, ECF No. 20, which motions the Court denied in view of their failure to articulate a cognizable ground for a hearing, *see* Min. Order, dated Dec. 14, 2016.

On November 29, 2016, the defendant filed a motion requesting a stay of a foreclosure sale of the Property and a motion to sequester the Note until the resolution of the instant case, *see* Def.'s Mot. Stay Foreclosure Sale, ECF No. 22; Def.'s Mot. Sequester Genuine Original Note, ECF No. 23, both of which motions were denied, like the defendant's motions for a hearing, in light of their failure to articulate cognizable grounds for the requested relief, *see* Min. Order, dated Dec. 14, 2016. As a result of the defendant's motion to stay the foreclosure sale of the

Property, however, and the plaintiff's response thereto, *see* Pl.'s Opp'n Def.'s Mot. Stay Foreclosure Sale, ECF No. 25, the Court became aware that the plaintiff was seeking to foreclose on the Property under a "power of sale" provision in the Deed of Trust that permits foreclosure by way of the non-judicial process outlined in D.C. Code § 42-815, and that a non-judicial foreclosure sale of the Property was set to occur on December 15, 2016.  Given the plaintiff's sole requested relief in the instant suit of foreclosure, the plaintiff was directed to advise the Court of "the status of the December 15, 2016, nonjudicial foreclosure sale" as well as "the relief, if any, still requested by the plaintiff in this action following said sale."  Min. Order, dated Dec. 14, 2016.

Thereafter, the plaintiff made two filings addressing the Court's concerns regarding the effect of the non-judicial foreclosure on the justiciability of the present action, *see* Pl.'s Resp. Court Order ("Pl.'s 1st Resp."), ECF No. 27; Pl.'s Resp. Court Order ("Pl's 2d Resp."), ECF No. 35, attaching exhibits related to the sale and asserting that the case is not moot notwithstanding the completed sale.  The defendant filed a motion to cancel the non-judicial foreclosure sale, contending that cancellation "is needed so Defendant can gather required documents and choose appropriate Bankruptcy Chapter."  Def.'s Pet. Cancel Sale.  The defendant also made or attempted to make multiple further filings, including an appeal of an order of the Court denying leave to file an unintelligible document.  *See* ECF Nos. 29–33, 36–38.

The defendant is no stranger to lawsuits against him involving real property.  For example, in *U.S. Bank National Association v. Poblete*, No. 15-cv-312 (BAH), 2017 WL 598471 (D.D.C. 2017), the plaintiff, which had foreclosed upon commercial real estate of which the defendant was the record owner, brought an action against the defendant alleging he "unlawfully trespassed upon, converted, and interfered with the legal title of the foreclosed property, *id.* at *1.

In the course of the litigation, the defendant failed to comply with discovery orders and, as in the instant action, filed or attempted to file multiple "unintelligible, repetitive, or irrelevant" documents with the Court. *Id.* at *2–*4.  As a consequence, sanctions were imposed on the defendant in the form of a default judgment. *Id.* at *6.  In addition, upon consideration of the defendant's filings in that case, as well as his history of vexatious filings in various lawsuits in both federal and local courts, a pre-filing injunction was issued requiring the defendant to obtain leave of court, pursuant to certain specified procedures, for any further filing. *Id.* at *9 & n.4.

Pending before the Court are the plaintiff's motion for summary judgment and the defendant's motion to cancel the non-judicial foreclosure sale.

## II.     DISCUSSION

Under Article III of the Constitution, federal-court jurisdiction is limited to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  The Supreme Court has interpreted this limitation to require that "an actual controversy be extant at all stages of review, not merely at the time the complaint is filed."  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  Accordingly, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).  If, for example, "the court can provide no effective remedy because a party has already 'obtained all the relief that it has sought,'" a case has become moot and, thus, the federal courts lack jurisdiction to decide the matter.  *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013).

In light of the non-judicial foreclosure of the Property, the question whether this case has become moot must be addressed before the merits of the plaintiff's claim for judicial foreclosure may be considered.  Even where, as here, "neither party has urged that [a] case is moot, resolution of the question is essential if federal courts are to function with their constitutional sphere of authority."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *see Wis. Pub. Power, Inc. v. FERC*, 493 F.3d 239, 263 (D.C. Cir. 2007) ("A federal court must satisfy itself that the party invoking federal jurisdiction has presented a justiciable case or controversy.").

Under District of Columbia law, aggrieved lenders may choose to recover on a deed of trust by way of judicial foreclosure, pursuant to D.C. Code § 42-816 and common law, or, if expressly permitted by the applicable deed of trust, non-judicial foreclosure pursuant to D.C. Code § 42-815, *et seq.*  While in a judicial foreclosure, "the court's involvement in the process . . . reduces the risk of error and predatory foreclosure practices," the non-judicial alternative may be more expedient and cost efficient for the parties.  *Rogers v. Advance Bank*, 111 A.3d 25, 29 (D.C. 2015).  Given the "lack of oversight during the non-judicial foreclosure process," D.C. Code § 42-815 requires lenders to provide notice to, as well as engage in mediation with, the party being foreclosed upon.  *Id.*; *see* D.C. Code § 42-815(b).  Notwithstanding these procedural differences, the judicial and non-judicial processes result in the same relief, *i.e.*, foreclosure.  *See Szego v. Kingsley Anyanwutaku*, 651 A.2d 315, 318 n.5 (D.C. 1994) (declining to distinguish between judicial and non-judicial foreclosure in describing the remedies available to an aggrieved lender).  Consequently, absent a request for relief other than foreclosure, the obtaining of one type of foreclosure moots a claim for the other variety.  *Accord Vettrus v. Bank of Am., N.A.*, No. 6:12–cv–00074–AA, 2012 WL 5462914, at *4 (D. Or. Nov. 6, 2012) (dismissing as moot claims related to non-judicial foreclosure "because defendants are now pursuing judicial

foreclosure"); *Fisher v. Mortg. Elec. Registration Sys., Inc.,* No. 11–3093–CL, 2011 WL 7024965, at *2 (D. Or. Oct. 26, 2011) (finding plaintiff's foreclosure-related claims moot "where the nonjudicial foreclosure sale has been rescinded" and "defendants have elected to pursue judicial foreclosure"); *C.J.A. Corp. v. Berkeley Conference Ctr.*, No. A096846, 2003 WL 1735671, at *2 (Cal. Ct. App. Apr. 2, 2003) ("The fundamental problem with [the plaintiff's] position is that [the] nonjudicial foreclosure sale mooted the judicial foreclosure proceeding.").

In light of the plaintiff's apparent receipt, by way of the non-judicial sale, of all the relief requested in the instant action, the plaintiff was directed to detail the "relief remain[ing] to be granted in this action notwithstanding the non-judicial foreclosure sale" and "why such relief is not moot." Min. Order, dated Feb. 16, 2017. In response, the plaintiff asserts that resolution of its pending claim would offer relief in two respects. First, it suggests that judicial foreclosure would prevent the defendant from exercising his statutory rights under D.C. Code § 42-815 to "challenge [the] propriety of notice of the default of notice of intention to foreclose" or "assert a claim for fraud or monetary damages associated with [the] loan transaction or the sale process." Pl.'s 2d Resp. at 3. Second, the plaintiff posits that judicial foreclosure would "render title to the Subject Property . . . good and marketable, thus eliminating the need for a subsequent *quiet title* action to satisfy title underwriting guidelines and protect [the plaintiff] from collateral attack under local law" by the defendant. *Id.* Apparently to reflect this relief, in its revised proposed order submitted in response to the Court's Minute Order regarding mootness, the plaintiff included language requiring the trustee to "file an Amended Report of Sale and a Motion to Ratify the Sale within thirty (30) days of the date of this Order," "[a]s required by local law," and ordering that "[u]pon this Court's ratification of the sale the substitute Trustee of Plaintiff may

record the substitute Trustee's Deed."  Proposed Order Granting Summ. J. Pl. ("Revised

Proposed Order") ¶¶ 6–7, ECF No. 35-2.  Neither of the plaintiff's arguments is availing.

The plaintiff's first argument fails to save the case from mootness because the

contemplated relief cannot be granted in the instant action.  The plaintiff's sole cause of action in

this matter is one for judicial foreclosure.  *See* Compl.; Pl.'s Mot. Summ. J.  While a ruling in the

plaintiff's favor would establish its entitlement to foreclose on the Deed of Trust, it would have

no bearing on the whole separate questions of whether the non-judicial foreclosure sale in this

matter complied with the statutory requirements for non-judicial foreclosure and was completed

without fraud.  The plaintiff has also noted that that the defendant "has pending a 'Petition to

Cancel Sale' . . . which purports to put into play the non-judicial foreclosure process triggered by

and completed by Plaintiff."  Pl.'s 1st Resp. at 2.[1]  Yet, any claim the defendant has regarding

the non-judicial foreclosure sale can only be brought pursuant to Federal Rule of Civil Procedure

13(e), which applies to counterclaims that matured after serving an earlier pleading.  That rule

requires a party to obtain leave of court to file such a counterclaim.  *See* FED. R. CIV. P. 13(e)

("The court may permit a party to file a supplemental pleading asserting a counterclaim that

matured or was acquired by the party after serving an earlier pleading.").  In making the

discretionary decision whether to permit a Rule 13(e) counterclaim, "a court typically considers

whether the case has proceeded to the point that allowing the counterclaim would cause

confusion, delay, complication, or hardship."  *U.S. ex rel. Westrick v. Second Chance Body

Armor, Inc.*, 893 F. Supp. 2d 258, 266 (D.D.C. 2012) (citing 6 CHARLES ALAN WRIGHT *et al.*,

---

[1]    While the defendant's Petition to Cancel Sale lacks clarity as to the grounds for the requested relief,
construing that pleading liberally and in conjunction with the defendant's other filings, and for the purposes of the
mootness analysis, the motion is interpreted to challenge generally the propriety of the non-judicial foreclosure sale.
*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed . . . .'"
(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

FEDERAL PRACTICE AND PROCEDURE § 1428 (3d ed. 2012)).  Given that this case is otherwise

moot, consideration of the counterclaim would only delay the resolution of this matter.

Moreover, even were the case not moot, any challenge by the defendant to the non-judicial

foreclosure sale involves facts and questions of state law unrelated to the plaintiff's claim for

*judicial* foreclosure, raising additional concerns as to the appropriateness of permitting the

counterclaim.  WRIGHT *et al.*, *supra*, § 1428 ("[U]nrelated claims, particularly if they are asserted

relatively late in the proceedings, may be more properly left to an independent suit.").  For these

reasons, pursuant to Federal Rule of Civil Procedure 13(e), the defendant's counterclaim is not

permitted and, thus, the defendant's motion to cancel the foreclosure sale is denied without

prejudice.  Accordingly, that motion does not resurrect this otherwise moot case.

    The plaintiff's second argument also fails to keep the case alive.  While the plaintiff avers

that a judgment of foreclosure by this Court would "satisfy title underwriting guidelines and

protect [the plaintiff] from collateral attack under local law," Pl.'s 2d Resp. at 3, these indirect

effects of a judgment in this matter do not suffice.   As the D.C. Circuit has explained, "[t]here

are cases where a legal status has an automatic effect in other jurisdictions (or even in the same

one)" and that effect "is found to preserve . . . from mootness" a case concerning that legal

status.  *Gordon v. Lynch*, 817 F.3d 804, 807–08 (D.C. Cir. 2016) (per curiam).  A common

example of this type of legal status is a criminal conviction, which "exposes the defendant to a

range of direct consequences, most obviously the effect of recidivism statutes."  *Id.* at 808.  Here,

however, the plaintiff has not pointed to any legal authority supporting the existence of

automatic legal effects of a judgment of this Court.  Rather, the plaintiff appears to describe the

benefits of obtaining the requested judgment, namely, the respect afforded judicial

pronouncements by title insurance companies and potential litigants, but the indirect benefits of

obtaining judicial imprimatur on relief already granted through a non-judicial process fail to save this case from mootness.  *See United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) ("True, a favorable decision in this case might serve as a useful precedent for respondent in a hypothetical lawsuit . . . .  But this possible, indirect benefit in a future lawsuit cannot save *this* case from mootness." (emphasis in original)).

The situation would be different were the Court's approval of the non-judicial foreclosure required before title could pass to the plaintiff.  The plaintiff suggests as much by including in its revised proposed order language requiring the trustee to "file an Amended Report of Sale and a Motion to Ratify the Sale within thirty (30) days of the date of this Order," "[a]s required by local law," and ordering that "[u]pon this Court's ratification of the sale the substitute Trustee of Plaintiff may record the substitute Trustee's Deed."  Revised Proposed Order ¶¶ 6–7.  In some jurisdictions, such as Maryland, following non-judicial foreclosure, title only passes to the new owner upon ratification of the sale by a court.  *See In re Cooper*, 273 B.R. 297, 302 (Bankr. D.D.C. 2002) ("In Maryland, legal title does not pass at a foreclosure until ratified by the equity court." (citing *Plaza Corp. v. Alban Tractor Co.*, 151 A.2d 170, 174 (Md. 1959)).  In the District of Columbia, however, title passes upon the completion of a non-judicial foreclosure sale and does not depend upon ratification by a Court.  *See id.* ("[T]he District of Columbia and Virginia do not require ratification of foreclosure sales. . . . These two jurisdictions allow the use of the deed of trust, which gives the trustee a power of sale to foreclose upon default of the terms in the deed of trust.  With such a tool, foreclosure and the passing of title depend upon a valid sale rather than a court of equity's determination that a sale is final."); *cf.* D.C. Super. Ct. R. Civ. P. 308 (requiring ratification by the court of sales conducted pursuant to a court order of *judicial* foreclosure).  Consequently, any purported "ratification" of the non-judicial foreclosure sale by

this Court would have no automatic legal effects and, therefore, is not relief rendering this matter justiciable.[2]

Under District of Columbia law and the Deed of Trust, the plaintiff was entitled to pursue either judicial or non-judicial foreclosure of the Property.  Having pursued to completion a non-judicial foreclosure, however, the plaintiff has rendered its sole claim for foreclosure no longer live.  As a result, the instant action is now moot, and the parties' invitation to resolve the merits of their dispute regarding the plaintiff's entitlement to judicial foreclosure must be declined.

## III.    CONCLUSION

For the foregoing reasons, the instant action is moot.  Accordingly, the plaintiff's motion for summary judgment is denied as moot, the defendant's motion to cancel the foreclosure sale is denied without prejudice, and the case is dismissed as moot.  The Clerk of the United States District Court for the District of Columbia is directed to close this case.

An appropriate Order accompanies this Memorandum Opinion.

Date:  March 29, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[2]    The mootness analysis also might differ had the plaintiff included in its complaint a cause of action for personal liability on the Note.  *See Szego*, 651 A.2d at 318 (holding lenders "may seek both a judgment against a maker or guarantor of the deed of trust note and a foreclosure (judicial or nonjudicial) pursuant to the deed of trust, and may do so in any sequence").  No such claim was asserted.  Assuming compliance with the applicable statutes of limitations, however, the plaintiff remains entitled to pursue any deficiency between the proceeds of the foreclosure sale and the defendant's liability under the Note.  *See Jefferson Fed. Sav. & Loan Ass'n v. Berks Title Ins. Co.*, 472 A.2d 893, 894 n.2 (D.C. 1984) ("When a foreclosure sale results from the power of sale conferred by the deed of trust, a civil action may be brought by the creditor for the amount of the deficiency." (citing *Finley v. Friedman*, 159 A.2d 668 (D.C. 1960); *Hoffman v. Sheahin*, 121 F.2d 861 (D.C. Cir. 1941))).  While the plaintiff's original complaint requests a deficiency judgment pursuant to D.C. Code § 42-816, *see* Compl. at 146, the plaintiff's response to the Court's order directing the plaintiff to detail the remaining relief sought in this lawsuit, including its Revised Proposed Order, makes no reference to recoupment of any deficiency whatsoever.  At this late date, having failed to press a claim for a deficiency, the plaintiff must file a separate action to pursue any such relief.  *Accord Fox v. Bd. of Trustees*, 42 F.3d 135, 142 (2d Cir. 1994) (noting, in affirming district court's denial of leave to amend complaint to add live damages claim to otherwise moot case, "we perceive no basis to allow a belated claim for damages to breathe life into a moribund dispute" (internal quotation marks omitted)).